LOLLEY, J.
| patricia Guillaume appeals a judgment of the First Judicial District Court, Parish of Caddo, State of Louisiana, in favor of Brookshire Grocery Company. For the following reasons, we affirm the trial court’s judgment.
Facts
On September 1, 2012, Guillaume was a customer in a Super One Foods of Shreveport, a grocery store owned by Brookshire Grocery Company (“Brookshire”). While shopping in the produce .section of the store, Guillaume claims she slipped on a “stream of dirty water” and fell to the floor, allegedly injuring herself. An EMS team was called, and Guillaume was transported to the hospital.
Guillaume filed suit, and a bench trial was set to commence. Immediately before the trial was to start, the trial court considered a motion for continuance filed by Guillaume the previous day. In the motion, she claimed her attorney read the EMS report that made reference to a videotape showing her slip and fall. The EMS report stated: “Management of the store reviewed to [sic] tapes prior to EMS leaving the scene. They state tapes show [patient] clearly falling, and collaborated [sic] her statements about the fall.” According to Guillaume, until that point in time her attorney was unaware of a videotape of her fall. During discovery, Brook-shire maintained that there was no video *206 of the incident. The trial court denied Guillaume’s motion, and the trial commenced.
At the trial, the trial court focused on the element of constructive notice required to be proven by Guillaume under the Merchant Liability Statute, La. R.S. 9:2800.6. The trial court considered evidence consisting of photographs of the water on the floor and testimony of witnesses. After Ldoing so, the trial court considered the applicable law and made, credibility determinations, ultimately rendering judgment in Brookshire’s favor. The trial court specifically determined that Guillaume had failed to prove that the water had been on the floor for a sufficient period of time to constitute constructive notice. Judgment was entered in favor of Brookshire, and Guillaume appeals.
Discussion

Motion for Continuance

In Guillaume’s first assignment of error, she argues that the trial court erred in denying her motion for continuance in order for her to pursue a copy of a “missing” videotape showing her fall. She argues that Brookshire gave conflicting reasons why it did not produce a videotape of the incident referred to in the EMS report, and she should have been afforded some time to pursue the tape. We disagree. ;
Louisiana C.G.P. art. 1601 provides that “[a], continuance may be granted in any 'case'if there is good ground therefor.” As we stated in Connor v. Scroggs, 35,521 (La.App.2d Cir.06/12/02), 821 So.2d 542, 553:
The trial judge must consider the particular facts in each case in deciding ■ whether to grant or deny a continuance. Some factors to consider are diligence, good faith and reasonable grounds. Equally important is the defendant’s corollary right to have his case heard as soon as is practicable. The trial judge may also weigh the condition , of the court docket, fairness to both parties and other litigants before the court, and the need for orderly and ^prompt administration of justice. (Citations omitted).
The denial of a motion for continuance will not be disturbed absent a showing of an abuse of discretion by the trial court. Johnson v. European Motors-Ali, 48,513 (La.App.2d Cir.11/20/13), 129 So.3d 697, 703, writ denied, 2013-2964 (La.02/28/14), 134 So.3d 1178; citing, Newsome v. Homer Memorial Med. Ctr., 2010-0564 (La.04/09/10), 32 So.3d 800.
The trial of this matter had been continued once before, on request by Brookshire and voluntarily agreed to by Guillaume. On this particular motion for continuance, the trial court heard argument by the parties. Guillaume’s attorney noted that she had discovered only the day before the statement on the EMS report regarding a videotape of the accident. Brookshire maintained throughout the proceedings (ie. during discovery and at the hearing on the motion) that it had no videotape of the incident.
Upon the trial court’s denial of the motion, Guillaume proffered testimony by Christopher Keith, the Shreveport flre-flghter/pai-amedic who prepared the EMS report. Officer Keith testified that although he had no independent recollection of the incident, “if I put it in the narrative, then it happened.” On the other hand, Harold Elliott, the assistant store manager, testified that he did not inform EMS that he had viewed a videotape depicting Guillaume’s fall.
In considering the motion, the trial court noted that, “if there’s no video, I don’t see where delaying the trial is going to make a *207 difference[.]” The trial court’s denial, of the motion for continuance was not' an abuse of discretion. Brookshire was consistent in its .assertion that there was no |4videotape of the incident. Moreover, Brookshire conceded that Guillaume fell in some water on the floor, which is what the EMS report stated a videotape would have shown. Furthermore, our review of the record indicates that Elliott quickly got to Guillaume after she fell. According to him, he stayed with her until EMS arrived at the scene, which calls into question how Elliott would have had time to find and view a videotape of the incident and make that statement to Off. Keith. We agree with the trial court that delay .of the trial would not have made a difference in this matter, and this assignment of error is without merit.

Constructive Knowledge

In her second assignment of error, Guillaume argues that the trial court erred in concluding she failed to carry her burden of proof on the element of constructive ' knowledge under La. R.S. 9:2800.6. According to Guillaume, the water she slipped on was dirty, as evidenced by the fact that her pink scrubs were dirty after the fall. Guillaume also points to witness testimony that showed there was water on the ground prior to her fall and there were shopping cart wheel marks through it. She maintains that had Brookshire exercised reasonable care and- inspected the floors regularly, it would have discovered the water prior to her slip and fall,- thus the condition of the floor presented an unreasonable risk of harm. We disagree.
Imposition of liability against a merchant for a customer’s injuries resulting from an accident on the merchant’s premises is governed by Louisiana’s Merchant Liability Statute, La. R.S. 9:2800.6. Davis v. Wal-Mart Stores, Inc., 2000-0445 (La.11/28/00), 774 So.2d 84; Grantham v. Eldorado Resort Casino Shreveport, 49,-474 (La.App.2d Cir.11/19/14), 152 So.3d 1028, 1033-4, writ denied, 2014-2654 (La.03/06/15), 160 So.3d 1290. Louisiana R.S. 9:2800.6 provides, in pertinent part:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, - passageways, and floors in. a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant’s premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant’s premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable. -
(2) The m'erchant either created or had actual or constructive notice of the condition which caused the damage,' prior to the occurrence.
(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.
C. Definitions:
(1) “Constructive -notice” means . the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had. exercised reasonable care. -The presence of an employee of the merchant in the vicinity in which the *208 condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have •known, of the condition^]
In addition to proving the elements set forth in La. R.S.9:2800.6(A) and (B), a plaintiff must come forward with positive evidence showing that the damage-causing condition existed for some period of time |fiand that such time was sufficient to place a merchant defendant on notice of its existence. White v. Wal-Mart Stores, 1997-0393 (La.09/09/97), 699 So.2d 1081; Williams v. Piggly Wiggly, 49,010 (La.App.2d Cir.05/14/14), 138 So.3d 1260. Mere speculation or suggestion is not enough to meet the stringent burden imposed upon a plaintiff by the statute governing negligence claims against merchants. Finley v. Racetrac Petroleum, Inc., 48,923 (La.App.2d Cir.04/09/14), 137 So.3d 193.
As stated by the Louisiana Supreme Court in White v. Wal-Mart Stores, supra at 1084-5:
Though there is no bright line time period, a claimant must show that “the condition existed for such a period of time[.]” Whether the period of time is sufficiently lengthy that a merchant should have discovered the condition is necessarily a fact question; however, there remains the prerequisite showing of some time period. A claimant who simply shows that the condition existed without an additional showing that the condition existed for some time before the fall has not carried the burden of proving constructive notice as mandated by the statute. Though the time period need not be specific in minutes or hours, constructive notice requires that the claimant prove the condition existed for some time period prior to the fall. This is not an impossible burden.
A trial court’s findings regarding liability for damages caused by a slip and fall accident at the defendant’s place of business are factual determinations that will not be disturbed absent manifest error or unless clearly wrong. Moy v. Brookshire Grocery Co., 48,177 (La.App.2d Cir.06/26/13), 117 So.3d 611, 615. Whether the condition exists for a sufficient length of time for a merchant’s discovery is necessarily a fact question. Id.
Where two permissible views of the evidence exist, the fact finder’s |7choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State through Dept. of Transp. & Dev., 617 So.2d 880 (La.1993); Williams v. State Farm Ins. Co., 47,348 (La.App.2d Cir.07/25/12), 103 So.3d 433. Further, when findings are based on determinations regarding credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact’s findings. Williams v. State Farm Ins. Co., supra.
In this case, although the parties agree that Guillaume slipped in water on the floor, the evidence presented by Guillaume failed to show that the water had existed for “some time” prior to her fall. Guill-aume testified that she walked up to the produce display without an issue, and stood on a mat while selecting some produce. When she stepped off the mat, Guillaume stated she slipped in the water. She did not notice the color of the water, i.e., whether it was dirty or clean. However, she did state that later on, she noticed her pink scrubs were dirty, leading her to believe the water was dirty. She admitted she had “no idea” how long the water had been on the floor, and there were no “warning” or “wet floor” signs set out in the area.
*209 Debra Plasance, a witness to the incident, was standing in the vicinity of the produce section. Plasance did not state how far away she was from Guillaume when she fell, but said she heard Guill-aume hit the floor. Plasance noted that there was water and produce on the floor. She also stated, “it looked like some grocery carts had actually gone through” the water. She also testified that she did not know 'if the water was clean or dirty, but repeated it appeared that carts had gone through the water.
1 «Harold Elliott, the store’s assistant manager, was on duty when Guillaume fell. According to Elliott, the store has no written inspection policy, but all store employees are responsible for overseeing the floor care and safety hazards. Elliott did not see Guillaume fall, but upon hearing of the incident he quickly went to the area and saw Guillaume on the floor. Elliott testified that he saw the water on the floor, and it looked “fairly fresh, fairly clear[.]” Produce water misters were used to keep the produce fresh. According to Elliott, those misters do not leak or splash water onto the floor. Furthermore, considering the water that Guillaume slipped on, Elliott did not believe the misters were the source of the water. He also testified that mats were placed on the floor in front of the produce, because a little water may accumulate on the produce and land on the floor when' a customer picks the produce. As to the actual water on the floor in which Guillaume slipped, Elliott did not notice any shopping cart tracks in it and saw no produce on the floor. Elliott believed the water had been there only a short time. Elliott testified that had the water been noticed earlier, “wet floor” signs would have been placed in the area.
In addition to the described testimony, the trial court also had photographs of the area, which indicated there was “water on the floor. The photographs show something green on the floor, which appears to be a piece of a leafy vegetable. From the photographs, the floors of the store look to be stained concrete — they are dark. Although the trial court opined that the photographs do not indicate any shopping cart tracks through the water, we note that the quality of the photographs is poor. Our review of the | ¡¡photographs does not indicate one way or the other whether the water had been present for any length of time. However, considering the weight of the evidence, such a determination is not critical to reaching a conclusion that Brookshire did not have constructive knowledge of the water.
After a thorough review of the record in this matter, we find that the plaintiff failed to meet the burden of proof required by La. R.S. 9:2800.6. Although the parties agree that Guillaume slipped in water on the floor, Guillaume still had the burden to prove the temporal element under the statute. She failed to prove that the water had been' present for a period, of time sufficient to show Brookshire’s constructive knowledge of the floor’s condition. The witness testimony was not altogether contradictory, and the trial court was within its discretion to give more weight to Elliott’s assurances. Thus, the trial court’s findings of fact were not manifestly erroneous or clearly wrong, and this assignment of error is without merit.
Conclusion
Considering the forgoing, ■ the trial court’s judgment in favor of Brookshire Grocery Co., and its insurer, Hartford Insurance Company of the Midwest is affirmed. All costs of this appeal are assessed to Patricia Guillaume. .
AFFIRMED.