NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 18-313

GWENDOLYN THIBODEAUX

VERSUS

BROOKSHIRE GROCERY COMPANY D/B/A SUPER 1 FOODS, ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2016-1009, DIVISION "E"
HONORABLE MICHELLE M. BREAUX, DISTRICT JUDGE

**********

CANDYCE G. PERRET
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Shannon J. Gremillion, and Candyce G. Perret, Judges.

AFFIRMED.

**William J. Casanova**
**Miller and Associates**
**P. O. Drawer 1630**
**Crowley, LA 70527-1630**
**(337) 785-9500**
**COUNSEL FOR PLAINTIFF-APPELLANT:**
    **Gwendolyn Thibodeaux**

**Charles J. Foret**
**Jason R. Garrot**
**Briney Foret Corry**
**P. O. Drawer 51367**
**Lafayette, LA 70505-1367**
**(337) 237-4070**
**COUNSEL FOR DEFENDANTS-APPELLEES:**
    **Brookshire Grocery Company, Inc. d/b/a Super 1 Foods, et al.**

**PERRET, Judge.**

This appeal follows a slip and fall trial and subsequent judgment that dismissed Appellant's suit. The trial court concluded that Appellant failed to prove any element of La.R.S. 9:2800.6 to establish Defendant's liability. After a review of the record, we affirm.

**Factual and Procedural History:**

Ms. Gwendolyn Thibodeaux, Appellant, was a patron of Super 1 Foods ("Super 1"), a subsidiary of Brookshire Grocery Company, Inc., in Lafayette on December 31, 2015. While returning to her buggy after selecting a cabbage from a cabbage bin, Appellant suddenly fell forward, landing on her left side. Though the fall was unwitnessed, Super 1's video surveillance captured the incident. The video shows an employee, identified as Tim Bourque, who was replenishing the cabbage bins, approach Appellant after the fall and pick up something on the floor by Appellant's head. He then proceeds to pick up additional items off of the floor in an area beyond where Appellant fell. He then returns to Appellant and appears to speak with her. Approximately two to three minutes after the fall, a man with a clipboard or pad, identified as Lester Washington, Super 1's store manager at the time, approaches Appellant on the floor and appears to speak with her. Paramedics arrive, and Appellant is transported by ambulance to Lafayette General Medical Center and treated for complaints of left hip pain, left lower back pain, and left thigh pain.

The video continued recording after Appellant was removed from the area. The video depicts customers immediately traversing the area in which Appellant fell. Mr. Bourque is then seen sweeping the produce area. Approximately twelve

minutes after Appellant is removed, Mr. Bourque brings out an additional cabbage bin and places it over the area in which Appellant fell.

Appellant filed suit alleging that Super 1 was negligent under La.R.S. 9:2800.6 in failing to keep the floor free of produce, which caused her to slip and fall. Both parties filed motions for summary judgment on the issue of liability, and both motions were denied. The matter then proceeded to a bench trial in which two witnesses testified, Appellant and Lester Washington. At trial, the surveillance video, stills from the video, post-accident photographs taken by Mr. Washington, the accident report, Appellant's deposition, Appellant's medical records, and Brookshire's corporate policy were all introduced into evidence. The trial court found in favor of Super 1, dismissing Appellant's claims.

Ms. Thibodeaux now appeals alleging five assignments of error: (1) that the trial court committed manifest error in affording any weight to Lester Washington's testimony, (2) that the trial court committed legal error in heightening Appellant's burden of proving an unsafe condition, (3) that the trial court committed legal error by failing to determine what the "condition" was that led to Appellant's fall, (4) that the trial court committed manifest and legal error in concluding that Appellant could not prove what caused the condition that led to her fall, and (5) that the trial court committed manifest and legal error in finding that Appellant did not prove any elements of La.R.S. 9:2800.6.

**Assignment of Error Number One:**

In assignment of error number one, Appellant asserts that the trial court erred in considering Mr. Washington's testimony when it allegedly adjudged him to lack credibility on summary judgment.

We review a trial court's decision to credit a witness's testimony for manifest error. *Rosell v. ESCO*, 549 So.2d 840, (La.1989). In evaluating a witness's credibility, "[w]here documents or objective evidence so contradict the witness's story . . . the court of appeal may well find manifest error or clear wrongness[.]" *Id*. at 844-45. "But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one . . . witness[], that finding can virtually never be manifestly erroneous or clearly wrong." *Id*. at 845.

Appellant first asserts that the trial court adjudged Mr. Washington to lack credibility in its Reasons for Ruling on a prior motion for summary judgment. Appellant argues that Mr. Washington's testimony at trial was identical to his prior allegedly inconsistent statements on summary judgment and, therefore, the trial court should have similarly not relied on his trial testimony.

In its Reasons for Ruling on the motion for summary judgment, the trial court stated: "The inconsistencies in Mr. Washington's statement and the video surveillance call Mr. Washington's credibility into account." However, the trial court had only Mr. Washington's affidavit and, as this was summary judgment, was precluded from making credibility decisions and weighing evidence. *Broussard v. Hertz Equip. Rental Corp.*, 09-177 (La.App. 3 Cir. 12/16/09), 27 So.3d 337. Therefore, the trial court denied summary judgment upon finding genuine issues of material fact as to whether there was a condition on the floor which caused Appellant's fall. Thus, the denial was not a ruling on Mr. Washington's credibility, but a determination that genuine issues of fact existed precluding summary judgment. The denial did not preclude the trial court from finding Mr. Washington's testimony credible at trial.

Appellant further argues that Mr. Washington's testimony was biased and inconsistent with the evidence. At trial, Mr. Washington testified that he inspected the area in which Appellant fell and did not find anything on the floor to cause her fall. This testimony was consistent with the portion of Mr. Washington's affidavit read at trial. Appellant asserts that Mr. Washington's statement is an impossibility because he was not shown the exact location of Appellant's fall prior to watching the surveillance video and that after the fall, the circumstances of the location changed. Appellant also argues that Mr. Washington is unreliable because his testimony that Appellant's leg gave out and his accident report stating that Appellant's foot gave out are uncorroborated. Appellant suggests that the Acadian Ambulance records, which note that Appellant slipped, substantiate Appellant's version of how she fell.

The video surveillance depicts Mr. Washington speaking with Appellant, and the evidence introduced at trial includes the accident report completed by Mr. Washington following his conversation with Appellant. At trial, Mr. Washington testified that Appellant never told him that she slipped, but that her leg gave out. Additionally, Mr. Washington testified that he was told by Mr. Bourque that Appellant's foot gave out, which is reported in the accident report. It is also clear that Mr. Washington was in the area of the fall while speaking with Appellant and had an opportunity to look around. Mr. Washington watched the surveillance video and testified that he knew there was no cabbage in the area. Additionally, the video and video photographs corroborate Mr. Washington's testimony that there was no cabbage in the area where the fall took place. The trial court was in the best position to view the demeanor of Mr. Washington and chose to credit his

4

testimony. After reviewing the record, we find no error with the trial court's conclusion regarding Mr. Washington's testimony.

**Assignments of Error Numbers Two, Three, Four, and Five:**

Assignments of error numbers two through five are similar in that all require a review of whether a condition imposing an unreasonable risk of harm existed. We will therefore consider these assignments of error together. In assignment of error number two, Appellant asserts that the trial court improperly heightened her burden of proving an unsafe condition at trial by suggesting that the trial court required her to identify or recall the unsafe condition as a prerequisite to satisfying her burden of proof. In assignment of error number three, Appellant argues that the trial court failed to make a factual determination regarding what condition was present. In assignment of error number four, Appellant asserts that the trial court committed manifest and legal error in finding that Appellant failed to prove what caused the condition leading to her fall. Lastly, in assignment of error number five, Appellant alleges that the trial court erred in its finding that Appellant did not prove the elements set forth in La.R.S. 9:2800.6, which includes proving an unsafe condition.

"A trial court's findings regarding liability for damages caused by a slip and fall accident at the defendant's place of business are factual determinations that will not be disturbed absent manifest error or unless clearly wrong." *Guillaume v. Brookshire Grocery Co.*, 50,745, p. 6 (La.App. 2 Cir. 6/29/16), 198 So.3d 204, 208. "Further, when findings are based on determinations regarding credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings." *Id*. A two-tiered test must be applied to reverse the findings of the trial court. *Mart v. Hill*, 505 So.2d 1120 (La.1987). First, the

5

appellate court must find from the record that a reasonable factual basis does not exist for the trial court's finding and, second, that the record establishes that the finding is clearly wrong (manifestly erroneous). *Id.*

Louisiana Revised Statutes 9:2800.6 governs merchant liability and provides that a merchant, such as Super 1, "owes a duty to" its customers "to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage." To recover under La.R.S. 9:2800.6, Appellant must show that she was damaged "because of a fall due to a condition existing in or on a merchant's premises" and she has the burden of proving all of the following:

(1) The condition presented an unreasonable risk of harm . . . and that risk of harm was reasonably foreseeable.

(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.

(3) The merchant failed to exercise reasonable care.

La.R.S. 9:2800.6(B). In its Reasons for Ruling, the trial court explained that it found Appellant failed to prove any of these required elements.

Although Appellant argues that the trial court required her to identify the unsafe condition, the fact is that Appellant's burden in proving merchant liability requires her to first prove that a condition existed and that it presented an unreasonable risk of harm. *See* La.R.S. 9:2800.6; *Hess v. Schwegmann Giant Super Markets, Inc.*, 595 So.2d 754 (La.App. 4 Cir. 1992). "A plaintiff must first show that he has fallen on a foreign substance or object on the floor in order to establish a prima facie case." *Radlein v. Holiday Inns, Inc.*, 07-322, p. 5 (La.App.

4 Cir. 11/14/07), 971 So.2d 1200, 1203, citing *Jones v. City of New Orleans*, 559 So.2d 28 (La.App. 4 Cir. 1990).  Contrary to Appellant's assertion, the trial court considered more than Appellant's failure to notice what caused her fall in arriving at its decision:

> The slip and fall was caught on surveillance camera maintained by the defendant, and within minutes following the incident, an investigation was conducted by Lester Washington, the store manager.  Pursuant to this investigation, a Customer Accident Report was prepared by Mr. Washington.  In the Customer Accident report, Ms. Thibodeaux indicates her leg gave out.  In addition to the video surveillance introduced at trial, Ms. Thibodeaux testified that she had no knowledge of what was on the floor that caused her to slip and fall.  Furthermore, medical records were introduced into evidence, indicating a history of knee problems and hip problems dating back to 2005.

Appellant asserts that "it is more likely than not" that she slipped and fell on cabbage or cabbage residue as cabbage was strewn about in the produce section. However, we agree with the trial court that the evidence suggests that no condition existed to cause Appellant's fall.

The video surveillance shows unidentified items or substances on the floor elsewhere in the produce section, however, those items do not appear in the area of the fall.  A comparison of the still photographs from the video make this conclusion even more clear.  The still photographs, though depicting a speckled flooring and cabbage in other areas of the produce section, clearly show nothing on the floor where Appellant's feet were at the time of her fall.  In fact, the still photographs show that Appellant walked in nearly the same spot with no issues where she would later fall on her way to the cabbage bin.

The record also includes Mr. Washington's testimony that he did not see anything in the area of Appellant's fall that would have been a cause for Appellant to slip.  Additionally, Appellant testified at trial that she does not know what she

slipped on, was not looking down when she slipped, and did not look around after she fell. The fall was unwitnessed. At her deposition, Appellant could not recall what foot slipped, only that she fell on her left side.

Although the post-accident photographs show something green under a pallet near the area where Appellant fell, those photographs were taken after customers traversed the area picking out cabbage and after Mr. Bourque brought out an additional cabbage bin. At trial, Mr. Washington identified the cabbage leaf in the post-accident photographs but explained that "[i]t wasn't in the area at the time that she fell."

Furthermore, a different cause for Appellant's fall was presented at trial— that Appellant's knee or foot gave out. Mr. Washington testified that Appellant told him that her leg gave out. The accident report also indicates that Appellant stated to Mr. Bourque that her foot gave out. Conversely, Appellant testified that she is certain that she slipped. However, Appellant's testimony mostly consists of what she does not remember. For instance, at her deposition and at trial, she did not recall having a conversation with Mr. Washington or that Mr. Washington asked her questions. Appellant also does not recall having past issues with both of her knees and hips and does not recall seeking medical treatment for those issues. The trial court noted that Appellant's medical records indicate a history of knee and hip problems including pain, complex regional pain syndrome, arthritis, and knee slipping. Appellant insisted at trial that she only recalls having right knee and hip problems in the past. However, her medical records indicate that in 2011 Dr. John Martin saw Appellant for, among other things, bilateral hip and knee pain and edema (swelling). In 2011 and 2012, Appellant was treated at Regional Medical Center of Acadiana (Lafayette General Southwest) for left knee pain and knee cap

slipping. In both years, x-rays were ordered of her left knee which showed mild to moderate tricompartment osteophytosis and chronic osteophytosis.

Additionally, the trial court did not need to determine what the condition was that led to Appellant's fall. It was Appellant's burden to prove that a condition imposing an unreasonable risk of harm existed. The trial court was only required to make a factual finding regarding whether Appellant proved those elements in La.R.S. 9:2800.6.

In *Reed v. Home Depot USA, Inc.*, 37,000, p. 5 (La.App. 2 Cir. 4/9/03), 843 So.2d 588, 591, *writ denied*, 03-1638 (La. 10/10/03), 855 So.2d 345, the second circuit considered the trial court's grant of summary judgment and agreed that the plaintiffs failed to "adduce sufficient evidence to create a genuine issue of material fact as to the essential element of causation." In *Reed*, one of the plaintiffs was at Home Depot looking at plants being displayed on pallets, when she turned, stepped forward, and immediately fell. The plaintiff denied slipping or tripping, stated that her view of the ground was unobstructed, and hypothesized that her foot had become entangled with the pallet; however, she admitted that her foot was not stuck under the pallet after her fall. The second circuit stated that the plaintiff's "speculation as to what caused the accident cannot supply the *factual support* necessary to show that the plaintiff would be able to meet her evidentiary burden at trial." *Id*. (emphasis in original).

Similarly, in *Gonzales v. Acadiana Fast Foods, Inc.*, 95-1011 (La.App. 3 Cir. 1/31/96), 670 So.2d 457, 96-554 (La. 4/19/96), 671 So.2d 920, this court affirmed a jury's finding that there was no hazardous substance that caused the plaintiff to fall in a Popeye's parking lot. At trial, the plaintiff testified that she was crossing the curb to the left of the center of the parking lane when she slipped

and fell. Her daughters both testified that they noticed oil in the plaintiff's hair at the hospital following her fall, and one daughter visited the scene the following day finding the parking lot wet with a rainbow effect on top of the water. The plaintiff also presented an expert who testified the oil in the plaintiff's hair was the same as the substance found on her shoes that she wore the day of the accident. One of the defendant's employees testified that, though a grease stain existed in the middle of the parking lot, nothing that would cause the plaintiff to fall existed in the area where the plaintiff fell. A second employee testified the plaintiff's feet were close to the curb after she fell. Lastly, photographs taken after the accident were introduced into evidence and this court noted that the only indication of a foreign substance that could have caused the plaintiff's fall was an area of discoloration, possibly oil or grease, in the center of the parking lane, approximately three feet from the curb. Therefore, this court held that the jury's finding of no causation was reasonable, "based upon the photographs and testimony, that there was no hazardous substance in the area that [the plaintiff] allegedly slipped." *Id*. at 460.

After a thorough review of the record, we find no manifest error in the trial court's conclusion that Appellant did not prove that a condition created an unreasonable risk of harm; in other words, Appellant did not carry her burden in proving the cause of her fall. Regarding assignment of error number four, without proving that such a condition existed, logically, the cause of said non-existent condition also cannot be proven.

In assignment of error number five, Appellant asserts that the trial court erred in finding she did not prove the elements set forth in La.R.S. 9:2800.6. "[F]ailure to prove any of these required elements [in La.R.S. 9:2800.6] will prove

10

fatal to a plaintiff's claim." *Jones v. Brookshire Grocery Co.*, 37,117, p. 7 (La.App. 2 Cir. 5/14/03), 847 So.2d 43, 49. For the reasons already discussed, we find no manifest error in the trial court's finding that Appellant did not prove the existence of a condition that presented an unreasonable risk of harm. Therefore, these assignments of error lack merit.

**Conclusion:**

For the foregoing reasons, we find no merit to Appellant's assignments of error and affirm the trial court's judgment at Appellant Gwendolyn Thibodeaux's cost.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.