# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 18-793


**ALINE WATERMAN**

**VERSUS**

**ACADIANA MALL CMBS, LLC**
**D/B/A THE MALL OF ACADIANA, ET AL.**


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20133079
HONORABLE MARILYN CARR CASTLE, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**JOHN E. CONERY**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Billy Howard Ezell, and John E. Conery, Judges.


**AFFIRMED.**

**Larry Lane Roy**
**Elizabeth C. Austin**
**Brown Sims, P.C.**
**600 Jefferson Street, Suite 800**
**Lafayette, Louisiana  70501**
**(337) 484-1240**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
     **Acadiana Mall CMBS, LLC**
     **CBL & Associates Management, Inc.**
     **Nickles and Dimes, Inc.**

**Jeremy L. Pichon**
**Alex A. Lauricella**
**Didriksen, Saucier, Woods & Pichon**
**3114 Canal Street**
**New Orleans, Louisiana  70119**
**(504) 586-1600**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Aline Waterman**

**Raymond Brown**
**Attorney at Law**
**2200 Veterans Boulevard, Suite 116 E**
**Kenner, Louisiana  70062**
**(504) 273-1510**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Aline Waterman**

**CONERY, Judge.**

The plaintiff, Aline Waterman (Ms. Waterman), filed suit against the Acadiana Mall (the Mall) and related entities alleging injury from a fall on the premises. In her petition, the plaintiff noted the discovery of a ball and a wooden wedge in the vicinity of her fall. Following a three-day trial, however, the trial court rejected the plaintiff's claim and cited with particularity the lack of evidence regarding causation. The plaintiff appeals. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

In the petition instituting this matter, Ms. Waterman alleged that, on June 15, 2012, she was a patron of the Mall in Lafayette "when suddenly and without warning she fell on an amusement ball, which was used as a door stop, causing serious injuries[.]" Advancing theories of premises liability due to negligence, Ms. Waterman named the Mall and mall-related entities as defendants.[1] She sought medical expenses and general damages associated with physical injuries she related to the fall.

During pre-trial proceedings, the plaintiff filed a motion seeking the presumption associated with spoliation of the evidence. By the motion, the plaintiff argued that the defendants failed to produce photographs of the scene of the fall, a daily activity report allegedly prepared by the Mall's security personnel, the "ball and wooden door-wedge" that she asserted caused her fall, and a statement that she contended was taken from a "key eyewitness" to the fall. Although the record does not contain a formal ruling on the motion, the trial court

---

[1] Acadiana Mall CMBS, LLC d/b/a The Mall of Acadiana, CBL & Associates Management, Inc. and Nickles and Dimes, Inc., d/b/a Tilt Studio appear as defendants in this matter.

ultimately explained during the three-day trial on the merits that the spoliation claim was inapplicable under the circumstances present.

In support of her claim at trial, the plaintiff presented testimony from Mall employees involved in the facility's maintenance, much of which involved the origins of the suspect wooden wedge and ball. The former object, the plaintiff contended, had fallen onto the floor from the frame of large glass doors at the Mall's entrance. And the ball, the plaintiff contended, could have come from an arcade near the site. The plaintiff suggested that the presence of these items indicated negligence on the part of the Mall.

After the close of evidence, the trial court ruled in favor of the Mall, finding that the plaintiff failed to meet her burden of proof under La.R.S. 9:2800.6. The trial court explained in a combined judgment and reasons for ruling that "there was much inconsistency in the testimony of almost every witness called to testify[.]" In contrast, the trial court listed areas of consistency, including testimony indicating that "[t]wo objects (a wooden wedge and a small ball shaped item) were near where [the plaintiff] fell." The trial court also explained that evidence indicated that "a regular compliment of clean-up personnel" was on duty when the accident allegedly occurred and that "[w]ooden wedges such as the one found near where Plaintiff reported falling were used by mall personnel to stabilize a sliding door near that food court entrance."

Nevertheless, the trial court further explained that:

[A] number of things were not established by the evidence. No one, not even the Plaintiff, could testify as to what caused her fall. No one could identify the source of the ball like object although some witnesses speculated it came from the Tilt Arcade. No one testified to seeing the Plaintiff fall. The gentleman who accompanied her was not called as a witness although Plaintiff identified him as her former fiancé.

2

Given that absence of proof, the trial court stated that:

> [C]onsidering all the evidence, Plaintiff has failed to prove by a preponderance of the evidence, that a condition existing on the premises of the Defendant caused her fall. While there was much discussion about the wooden wedge and it was sufficiently established that the wedge belonged to Defendant, the Plaintiff failed to prove the wedge caused her fall. To the contrary, she admitted she did not know what caused her fall, only that two objects, a wedge and a ball like object were observed near where she fell. As noted, there was no testimony from her companion, or anyone who observed the fall, and could provide a reason for the fall.
>
> Inasmuch as Plaintiff has failed to prove by a preponderance of the evidence that a condition existing on the premises of the Defendant caused her fall she has failed to establish her case sufficiently to recover. Moreover, even if one were to assume one of the objects caused the fall (which assumption would be improper considering Plaintiff's burden or proof), Plaintiff failed to prove the condition existed for some time before the fall and failed to carry the burden of proving constructive notice as mandated by the statute.

Pertaining to this latter point, the trial court explained:

> The Plaintiff did not establish that either object was present for such a period of time that it would have been discovered if the merchant had exercised reasonable care. To carry the burden of proving this temporal element, a plaintiff must present "positive evidence" of the existence of the condition prior to the accident. A claimant who simply shows that the condition existed without an additional showing that the condition existed for some time before the fall has not carried the burden of proving constructive notice as mandated by the statute. In this case, it was established that the food court entrance where the fall is alleged to have occurred was very busy. Many customers would have traversed the area. The fall was reported at 12:40 P.M. The lunch crowd would have been using the entrance for at least 30 minutes prior to the fall, without incident.

Accordingly, the trial court rendered judgment in favor of the defendants.

The trial court subsequently denied the plaintiff's motion for new trial,[2] reiterating its determination that the plaintiff "admitted she did not know what

---

[2] Prior to the setting of that motion for contradictory hearing, the plaintiff obtained an initial order of appeal. Upon a determination that the appeal was premature, however, this court dismissed the initial appeal and remanded the matter for a ruling on the motion for new trial. *See*

caused her fall, only that two objects, a wedge and a ball like object were observed near where she fell." Thus, the trial court explained that "[w]hile it might be possible that she slipped on the wedge or the small ball like object, she failed to establish the cause of her fall by a preponderance of the evidence. The presence of the two objects in the vicinity of her fall does not prove that either caused her to fall."

The plaintiff appeals, assigning the following as error:

I.     The trial court erred in denying Ms. Waterman's Spoliation Motion;

II.    The trial court erred in not allowing Ms. Waterman to be refreshed with her deposition testimony; and

III.   The trial court's judgment is not supported by law or fact.

## LAW AND DISCUSSION

### *Spoliation of Evidence*

By her first assignment of error, the plaintiff contends that the trial court abused its discretion in denying her request for entry of a sanction related to spoliation of the evidence. In addition to the formal motion referenced above, the plaintiff pursued a line of questioning at the bench trial in which she suggested that she was not provided with a copy of a full accident report upon demand. In her appellate brief, the plaintiff further references evidence that she suggested existed at one time, but that the Mall failed to retain or turn over during discovery. The plaintiff states that "Acadiana Mall purposely failed to produce key evidence relating to the cause of [her] fall, including photographs, statements of a key eyewitness, and complete accident reports." Continuing, she asserts that "[a]s a

Waterman v. Acadiana Mall CMDS, LLC, 18-316 (La.App. 3 Cir. 7/11/18), 2018 WL 3386454 (an unpublished opinion) (citing *Egle v. Egle*, 05-0531 (La.App. 3 Cir. 2/8/06), 923 So.2d 780, *writ denied*, 07-1596 (La. 10/26/07), 966 So.2d 579).

result, an adverse inference should have been ordered that Ms. Waterman's fall was caused by one (1) of the two (2) small objects that were lying on the ground in the food court entrance." The plaintiff contends, in support, that "[i]t is customary and logical for Acadiana Mall [ ] to retain the evidence at issue, as it assists in investigating the scene of an accident." She further points to testimony of employees of the Mall which, she suggests, is indicative of additional evidence having been gathered.

The evidentiary doctrine of spoliation of evidence "refers to an intentional destruction of evidence for the purpose of depriving the opposing parties of its use in pending or anticipated litigation[.]" *Walker v. Manitowoc Co., Inc.*, 16-897, p. 20 (La.App. 3 Cir. 10/10/18), 259 So.3d 465, 478 (quoting *Carter v. Hi Nabor Super Mkt., LLC*, 13-0529, p. 6 (La.App. 1 Cir. 12/30/14), 168 So.3d 698, 703, *writ denied*, 15-0190 (La. 4/17/15), 168 So.3d 399). *See also Temes v. Manitowoc Corp.*, 14-93 (La.App. 5 Cir. 12/23/14), 181 So.3d 733. In the event a trial court determines that a suspect party failed to produce evidence within its control, the trial court may impose a sanction, including "an instruction to the jury that it may infer that the evidence was detrimental to that party." *Carter*, 168 So.3d at 704. That adverse inference, however, is not applicable "when the party gives an adequate explanation for the failure to produce the evidence." *Id.* On appeal, a trial court's ruling on the issue of spoliation of evidence is reviewed for abuse of discretion. *Id.*

Following consideration, we find no abuse of discretion in the trial court's refusal to apply the adverse presumption as urged by the plaintiff. We first point out that the plaintiff's presentation of the spoliation issue to the trial court and, in turn, the trial court's consideration of the motion is not squarely presented in this

record. Certainly, the plaintiff's formal, pre-trial motion for sanctions related to the claim of spoliation of evidence is contained therein. The record contains no pre-trial ruling on that motion.

However, the trial court's refusal to apply the evidentiary doctrine of spoliation of the evidence is best reviewed within the context of the case. The transcript indicates that the matter complained of by the plaintiff in her assignment of error arose during a line of inquiry on redirect examination. Defense counsel objected, resulting in the following colloquy which merged concepts of relevancy of the questioning and spoliation of the evidence:

> Q. [Plaintiff's counsel]   When you went back to the mall to talk - - I mean, to try to get a copy of the incident report - - I think, earlier, you testified that you - - an employee of the mall put you on the phone with somebody?
>
> A.   Yes.
>
> Q.   Okay.  And can you tell me what that conversation was, again[?]
>
> MR. ROY [Defense counsel]:  Your Honor, I think we've gone through all of this.
>
> THE COURT:  Well, we have.  And it's really irrelevant. Unless it has to do with a fact of the accident, whether they cooperated or not has nothing to do with whether they're liable.
>
> MR. PICHON [Plaintiff's counsel]:  Okay.
>
> THE COURT:  I mean, I don't understand the point of it.
>
> . . . .
>
> THE COURT:  - - nobody is denying that they said that they could not give her the report and that she would have to contact [the] home office.  So nobody's denying that.
>
> MR. PICHON:  Okay.  It was the conversations with the corporate guy.

6

THE COURT: Well, really, he didn't say anything, other than, you know, I'm not giving you the report. I mean, I don't know what that has to do with anything. Whether she got the report or not has nothing to do with whether they're liable.

MR. PICHON: Fair enough, Your Honor. All right. And, Your Honor, the conversations with Mr. Mike Arnette, as we understand it, would have been - - We, now, believe that Mr. Mike Arnette might have been an attorney for corporate.

And that would have gone to - - Those conversations would have put him on notice that litigation would ensue and possibly gone to the spoliation motion, which we previously filed.

THE COURT: Well, I mean, first of all, we've been through the spoliation motion.[3] Spoliation applies if there is some testing or something that needs to be done to an object.

In this case, you've got a piece of wood and a ball. Okay? Everybody's got a picture of it. There's no spoliation. Nobody's denying it existed. So I just don't think spoliation is, really, an issue in this case.

MR. PICHON: Yes, Your Honor.

THE COURT: And, secondly, the fact that she went and talked to somebody in an office doesn't mean she's going to file suit. I mean - - So I just don't think it's relevant.

MR. PICHON: Yes, Your Honor.

THE COURT: It really doesn't go to the issue of liability.

MR. PICHON: Thank you, Your Honor.

Thus, absent further discussion on the record and lack of objection, the record does not reveal abuse of discretion in the trial court's ruling to the extent it can be said to constitute a denial of the formal motion for sanctions.

As a final point, we note that the plaintiff here requested an application of an adverse presumption. Significantly, however, this matter proceeded as a bench

---

[3] The record contains no further indication as to any ruling on the motion for sanctions or related discussion thereof.

7

trial, not one in which an instruction for the permissive application of an adverse inference would have been possible. *See Carter*, 178 So.3d at 704 (providing for "an *instruction to the jury* that it *may infer* that the evidence was detrimental to that party" (emphasis added)). Rather, the trial court was in a position to consider and weigh the totality of the evidence, or any corresponding lack thereof.

This assignment of error lacks merit.

### *Deposition Testimony*

By her next assignment, the plaintiff asserts that "[t]he trial court erred in not allowing [her] to introduce into evidence her own deposition testimony." Specifically, she points to her trial testimony wherein she explained on direct examination that, "because her fall happened so fast, she did not know whether she fell on the small ball/toy or the wooden wedge."[4] She suggests, however, that she later "clarified that she fell on one (1) of the two (2) small objects[.]" On this point, she points to further questioning to which she stated that she "believe[d] it was one of them."[5]

---

[4] For this proposition, the plaintiff cites the following exchange with her attorney:

Q.     All right. Now, you said, earlier, that Mr. Solomon opened the door for you. Y'all - - It was the left door, near Foot Locker; is that correct?

A.     Yes.

Q.     And, then, you said - - you told us, earlier, I just remember falling.

A.     Yes.

Q.     You didn't have any idea what caused you to fall.

A.     Not at that time. It happened so fast.

[5] The larger exchange reads:

Q.     You don't know what you fell on. Isn't that right?

A.     It could have been either one. No.

On the issue of whether the plaintiff could be presented with her deposition, the pertinent passage arose on counsel's re-direct examination of the plaintiff. The ensuing colloquy indicates:

Q.    Ms. Waterman, defense counsel asked you a number of questions, right? Correct?

A.    Yes.

Q.    Some - - You answered to the best of your ability, correct?

A.    Yes, I did.

Q.    And you answered truthfully, correct?

A.    Yes, I did.

Q.    Okay. Now, you testified that you fell on either the ball or the wood, correct?

A.    Yes.

Q.    And you also said that, when you stepped on the floor, you had a sensation under your foot.

        MR. ROY:  Your Honor, it's leading, and counsel is - -

        THE COURT:     Sustained.

        . . . .

BY MR. PICHON:

Q.    Well, let me ask this question: When you walked into the mall, did you have a sensation that you stepped on something, other than the floor?

        MR. ROY:  It's still leading, Your Honor.

        THE WITNESS:  Yes.

---

Q.    It could have been neither of those. Isn't that correct?

A.    No. I believe it was one of them.

9

THE COURT: It is leading. And I would note that she has never - - that has never come out of her mouth. It came out of his mouth.

MR. ROY: That's correct.

MR. PICHON: Well, Your Honor, I'm actually impeaching my own witness. Because she said that in her deposition.

MR. ROY: Well - - But, Your Honor - -

THE COURT: Yeah. But you can't impeach your own witness. Okay? You call your witness. You don't impeach her. She - - That has never come out of - -

MR. PICHON: Well, I'm not - - I'm trying to - - What I'm trying to do is - -

THE COURT: No. You're trying to bolster her testimony with some prior sworn testimony, which is contrary to what she said today.

She said she had no idea what she - - what happened until she fell and she saw a ball and a piece of wood on the floor. That what's she said today.

Now, you're trying to get her to say something else. That's not what she said.

BY MR. PICHON:

Q.    Well, do you recall taking a deposition?

THE COURT: But, Mr. - -

THE WITNESS: Yes.

THE COURT: What I'm telling you, Mr. Pichon, is, you cannot bolster your witness's testimony through a deposition. A deposition can be used to impeach. It cannot be used to bolster testimony. She's testifying live.

MR. PICHON: Right. I understand. But - -

THE COURT: Okay. So you can't go back to her deposition to try to bolster her testimony. Okay?

10

MR. PICHON: But I - - Your Honor, are you saying that I can't ask her a question that was asked in the deposition?

THE COURT: That's right. Because you cannot impeach your own witness.

MR. PICHON: It was not for impeachment purposes.

THE COURT: Yeah. Well, I know. You're trying to bolster her testimony. You can't use a deposition for that, either.

MR. PICHON: I understand, Your Honor.

THE COURT: Okay.

MR. PICHON: Understood. I'll move on.

Given that exchange, and after review, we find no abuse of the trial court's discretion in rejecting counsel's request. First, the colloquy reflects that the plaintiff's counsel asserted both that the deposition testimony was necessary for impeachment and, within the same passage, as "not for impeachment purposes." Such an argument relates to admissibility under La.Code Evid. art. 607(D).[6]

---

[6] As pointed out by the Mall in briefing to this court, La.Code Evid. art. 607(D)(2), which pertains to "Attacking and supporting credibility generally[,]" provides:

> **D. Attacking credibility extrinsically.** Except as otherwise provided by legislation:
>
> . . . .
>
> (2) Other extrinsic evidence, including prior inconsistent statements and evidence contradicting the witness' testimony, is admissible when offered solely to attack the credibility of a witness unless the court determines that the probative value of the evidence on the issue of credibility is substantially outweighed by the risks of undue consumption of time, confusion of the issues, or unfair prejudice.

The Article's Comment (a) (citations omitted) provides, in part, that:

> Paragraph A follows Federal Rule of Evidence 607. It substantially changes Louisiana's traditional common-law approach to attacking the credibility of witnesses. Abuse of this provision should be prevented by the exercise of judicial discretion. For example, the court should prohibit a party's attacking the credibility of his own witness when it is clear that he is doing so primarily with the intention or effect of adducing otherwise inadmissible evidence, typically a prior inconsistent statement, on the pretext of attacking credibility.

11

By the plaintiff's appellate brief, however, counsel suggests that the deposition was necessary to refresh the plaintiff's memory, so as to "attempt to resolve any confusion as to whether [she] believed she slipped on something[.]" The plaintiff asserts that the trial court's ruling was error as a matter of law pursuant to La.Code Evid. art. 611, related to "[m]ode and order of interrogation and presentation[,]" and La.Code Evid. art. 612. The latter article, titled "[w]riting used to refresh memory[,]" provides, in pertinent part, that:

> **A. Civil cases.** In a civil case, any writing, recording, or object may be used by a witness to refresh his memory while testifying. If a witness asserts that his memory is refreshed he must then testify from memory independent of the writing, recording, or object. If, before or during testimony, a witness has used or uses a writing, recording, or object to refresh his memory for the purpose of testifying in court, an adverse party is entitled, subject to Paragraph C, to have the writing, recording, or object produced, if practicable, at the hearing, to inspect it, to examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness. If production of the writing, recording, or object at the hearing is impracticable, the court may make any appropriate order, including one for inspection.

*Id.*

The plaintiff now contends for the first time on appeal that, by failing to allow her "to refresh her memory, the trial court excluded evidence on a dispositive issue in the case – whether Acadiana Mall['s] conduct caused [her] injuries – and as a result prejudiced [her] case." Preliminarily, as seen in the above colloquy, however, there is no indication in her testimony that the plaintiff could not recall the event as she testified as to her fall both during direct examination and on cross-examination. Neither is there indication in the above passage that plaintiff sought to introduce the deposition passage pursuant to La.Code Evid. art. 612, as she does here. *See Matranga v. Parish Anesthesia of Jefferson, LLC*, 14-448, p. 16 (La.App. 5 Cir. 5/14/15), 170 So.3d 1077, 1089 ("A party may not

complain on appeal about an evidentiary ruling in the trial court unless the trial judge was given the opportunity to avoid the perceived error, and the ruling 'affected' a 'substantial right' of the party."), *writs denied*, 15-1143, 15-1168 (La. 9/18/15), 178 So.3d 148, 152; *Stephenson v. Van Vleit*, 96-1407, p. 13 (La.App. 3 Cir. 4/30/97), 693 So.2d 858, 866 (providing that "generally, appellate courts will not consider issues raised for the first time on appeal."), *writ denied*, 97-1431 (La. 9/19/97), 701 So.2d 174. Rather, the plaintiff and the trial court discussed whether the deposition was appropriately introduced for credibility purposes pursuant to La.Code Evid. art. 607.

Moreover, the excerpt of the deposition testimony proffered by the plaintiff does not reveal testimony advancing her trial testimony. The plaintiff instead explained as follows in an exchange with counsel at the time of the deposition:

Q      What was it, if you know, that caused you to fall? That is - -

A      Well, the - - like I say, it had to be that hard little rubber ball that was in the floor or it could have been the door stop. It could have been either one. I'm not sure. It just happened so fast.

Q      If you had not seen after you fell, if you had not seen the ball or the door stop - - I know you did, but if you hadn't, would you have been able to know that you had stepped on something? In other words did you feel it when you stepped on whatever you stepped on?

A      Yeah. I felt it a little. I felt because, you know, like I say I fall so I wasn't quite sure which one, you know.

Q      All right. And you could feel yourself stepping on it?

A      Well, yes, because - - and it happened so fast.

Q      I understand. But I mean you could actually - -

A      Yes.

Q      You have the sensation that you stepped on something other than - -

A      Yes.

Q      - - the flat floor?

A      Yes.

Q      And what part of your foot do you recall stepping on something? That is was it the forward part of your foot, toward the rear, or do you know?

A      I - - it's very hard to say, you know.

As stated above, the plaintiff explained at trial that she fell on either the ball or the wedge, whereas the plaintiff similarly referred in her deposition to having slipped on either the ball or the wedge. In neither passage was she able to differentiate between the two. And, as revealed in the reasons for ruling, the trial court found that inability fatal to the plaintiff's case.

On this latter point, the trial court explained that, while there was discussion of the presence of the wooden wedge and that it belonged to the Mall, the trial court determined that: "Plaintiff failed to prove the wedge caused her fall. To the contrary, she admitted she did not know what caused her fall, only that two objects, a wedge and a ball like object were observed near where she fell." And, "[m]oreover, even if one were to assume one of the objects caused the fall (which assumption would be improper considering Plaintiff's burden of proof), Plaintiff failed to prove the condition existed for some time before the fall and failed to carry the burden of proving constructive notice as mandated by the statute."

As discussed below, both of these findings are supported by the record. Accordingly, even if upon a finding that the trial court's evidentiary ruling was in error, it was not one dictating a different outcome. *See Matranga*, 170 So.3d 1077.

This assignment lacks merit.

*Burden of Proof*

By her final assignment of error, the plaintiff suggests that the trial court was manifestly erroneous in determining that she failed to meet her burden of proof and particularly questions the trial court's determination that she "did not know what caused her fall, only that two objects, a wedge and a ball like object were observed near where she fell." The plaintiff pointedly suggests that "there is ample evidence that Appellant slipped on one (1), if not both, of the two (2) small objects[,]" and, further, that "the record is clear that the presence of the wooden wedge <u>and</u> the small red ball/toy on the ground in the entranceway resulted from Acadiana Mall'[s] wrongful conduct."

In pertinent part, La.R.S. 9:2800.6 provides a plaintiff's "[b]urden of proof in claims against merchants" as follows:

> A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
>
> B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
>
> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
>
> (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
>
> (3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal

15

uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

C.    Definitions:

(1)    "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.

Given the statute's inclusion of mandatory language, a plaintiff seeking relief under La.R.S. 9:2800.6 "must [ ] prove each of the enumerated requirements of Section (B)." *White v. Wal-Mart Stores, Inc.*, 97-0393, p. 4 (La. 9/9/97), 699 So.2d 1081, 1084. Thus, a plaintiff's failure to prove any of the above-three requirements is fatal to his or her claim under the statute. *Pierite v. DG Louisiana, LLC*, 18-149 (La.App. 3 Cir. 11/7/18), 258 So.3d 901.

As explained, the trial court determined that the plaintiff failed to prove either the causation of her fall or that the Mall had constructive notice of a condition causing the causing the damage as required by La.R.S. 9:2800.6. We consider these factual findings in turn and in light of the applicable manifest error standard of review. *See Pierite*, 258 So.3d 901.

Pointedly, reference to the record and to the plaintiff's arguments support the trial court's determination that the plaintiff failed to identify the causation of her fall. Rather, the plaintiff alternatively suggests that the wooden wedge, the ball, or both objects caused her fall. She reported at trial that she saw neither object beforehand, but found both after her fall. Nor did any other witness identify such causation, let alone one attributable to the Mall. Given that equivocation, the trial

16

court was not manifestly erroneous in determining that the plaintiff failed to sustain her burden of proving causation.

Neither was the trial court erroneous in concluding that the plaintiff failed to prove that the Mall had constructive notice of the alleged condition causing the accident. In this regard, the supreme court has specially instructed that La.R.S. 9:2800.6(C)(1) includes a temporal element requiring a plaintiff to "make a positive showing of the existence of the condition prior to the fall." *White*, 699 So.2d at 1084. Thus, even a plaintiff who has demonstrated a condition's existence, fails in his or her burden of proving constructive notice absent "an additional showing that the condition existed for some time before the fall[.]" *Id.* "Though the time period need not be specific in minutes and hours, constructive notice requires that the claimant prove the condition existed for some time period prior to the fall." *Id.* at 1084-85.

Notwithstanding that directive, the plaintiff failed to prove the presence of the wedge and/or the ball in the area for *any* period of time prior to the fall, let alone one that constituted notice. Importantly, "'[m]ere speculation or suggestion is not enough to meet the stringent burden imposed'" by La.R.S. 9:2800.6. *Pierite*, 258 So.3d at 909 (quoting *Guillaume v. Brookshire Grocery Co.*, 50,745, p. 6 (La.App. 2 Cir. 6/29/16), 198 So.3d 204, 208).

Finally, we find no error in a rejection of the plaintiff's contention that she was relieved of proving the temporal element of her claim as it was one created by the Mall. *See Cole v. Brookshire Grocery Co.*, 08-1093, p. 5 (La.App. 3 Cir. 3/4/09), 5 So.3d 1010, 1013-14 (observing that "La.R.S. 9:2800.6(B)(2) states that the plaintiff must show that the defendant *created* the harm **or** had *actual **or** constructive notice* of the harmful condition."), *writ denied*, 09-0728 (La. 5/15/09),

8 So.3d 589. On this point, the plaintiff reviews witness testimony indicating that wooden wedges such as the one identified after the fall were used in the operation of sliding glass doors at the Mall's entrance. In addition to the fact that the trial court did not find that the plaintiff demonstrated that the wooden wedge caused her fall, the record does not establish that the use of the wedges in the door constituted a harmful condition. Rather, it was the location of the wedge on the floor that arguably created the cited harm. No testimony identified how the wedge came to be located on the floor. And, finally, this construct of La.R.S. 9:2800.6(B)(2) relied upon by the plaintiff in her brief does not account for the plaintiff's alternative suggestion that the red ball found after the fall was a causative factor.

This assignment lacks merit.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this proceeding are assigned to the appellant, Aline Waterman.

**AFFIRMED.**