# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 18-149

**LEMARR PIERITE**

**VERSUS**

**DG LOUISIANA, LLC**

**********

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2016-3415-B
HONORABLE WILLIAM BENNETT, DISTRICT JUDGE

**********

**D. KENT SAVOIE**
**JUDGE**

**********

Court composed of Billy Howard Ezell, Shannon J. Gremillion, and D. Kent Savoie, Judges.

**REVERSED AND RENDERED.**

**Cory P. Roy**
**Brandon J. Scott**
**Benjamin D. James**
**Renee Y. Roy**
**Roy Scott & James**
**107 North Washington Street**
**Marksville, LA 71351**
**(318) 240-7800**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
      **Lemarr Pierite**

**Peter J. Wanek**
**Trevor C. Davies**
**McCranie, Sistrunk, Anzelmo, Hardy, McDaniel & Welch**
**909 Poydras St., Suite 1000**
**New Orleans, LA 70112**
**(504) 831-0946**
**COUNSEL FOR DEFENDANT/APPELLANT:**
      **DG Louisiana, LLC**

**SAVOIE, Judge.**

Defendant, DG Louisiana, LLC ("Dollar General"), appeals a judgment in favor of Plaintiff, Lamarr Pierite, finding Dollar General liable for a slip-and-fall incident and awarding Mr. Pierite with $30,000.00 in general damages, in addition to special damages and costs. For the following reasons, we reverse and render judgment in favor of Defendant.

## FACTUAL AND PROCEDURAL BACKGROUND

Mr. Pierite alleges that he was injured on August 27, 2015, at a Dollar General store in Marksville, Louisiana, when he slipped and fell in a liquid substance on the floor. He was twenty-three years old at the time. He alleges that as a result of the incident he sustained injuries to his back, neck, and left shoulder.

Mr. Pierite filed a petition for damages against Dollar General on August 12, 2016. A bench-trial was held August 23, 2017. Mr. Pierite's counsel elicited testimony from Mr. Pierite and from his treating physician, Dr. Dixie Clement. In addition, various evidence was accepted into the record including video surveillance showing the incident, photographs of Mr. Pierite and the scene following the incident, Mr. Pierite's medical records from Dr. Clement, and deposition testimony of Sherie Harris, who was at the Dollar General at the time of the incident in connection with her employment with a greeting card company.

After Mr. Pierite presented his case, Dollar General moved for an involuntary dismissal, arguing that Mr. Pierite had failed to prove that Dollar General had actual or constructive notice of the alleged liquid on the floor. The trial court denied the motion. Thereafter, Ms. Linda Hargrave, the store manager of Dollar General who was present at the time of the incident, was called to testify. Following the presentation of evidence, the trial court took the matter under advisement.

Ultimately, the trial court found Dollar General liable and awarded Mr. Pierite $30,000.00 in general damages, $2,670.27 in special damages, $1,500.00 for expert witness fees, $79.50 for medical record costs, legal interest, and court costs.

In its written reasons for judgment, the trial court stated:

> Pierite clearly slipped and fell. Pierite's testimony was very credible that there was some type of liquid that he fell in and that this liquid was on the rear of his body on his clothes. The evidence is also undisputed that Hargrave did not look at his rear for this purpose.
>
> . . . .
>
> Because the video evidence clearly shows traffic in the area where Pierite fell, which included a small child drinking a beverage prior to Pierite's fall, this Court can reasonably infer that it is likely that this was the cause of the liquid on the floor, and that the liquid remained on the floor for some time prior to Pierite's fall.
>
> Based on the above, this Court finds that that plaintiff has proven more probable than not that there was a liquid on the floor of the Dollar General Store that caused his fall; this liquid was on the floor for a sufficient period of time wherein Dollar General had notice; the liquid caused the fall and resulting damages.

Dollar General appeals. It asserts the following as assignments of error:

1. The trial court erred in denying Dollar General's Motion for Involuntary Dismissal and finding Dollar General liable under La.R.S. 9:2800.6 despite the absence of any evidence that Dollar General had actual or constructive notice of the alleged liquid substance on the floor.

2. The trial court erred by improperly inferring that the source of the alleged liquid on the floor was a small child drinking a beverage prior to plaintiff's fall despite no positive evidence that the small child's beverage was leaking or otherwise spilled.

3. The trial court committed clear error by finding that plaintiff was very credible.

4. The trial court's award of $30,000 in general damages was excessive where there was evidence of prior injuries, subsequent injuries, a substantial gap in treatment, and plaintiff's credibility was questionable.

## ANALYSIS

Motion for Involuntary Dismissal:

In connection with its first assignment of error, Dollar General suggests that the trial court's denial of its motion for involuntary dismissal was in error.

Louisiana Code of Civil Procedure Article 1672(B) states the following:

> In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.

As this court recognized in *Hudson v. AIG National Insurance Company*, 10-63, p. 4 (La.App. 3 Cir. 6/2/10), 40 So.3d 484, 488-89, with respect to a party seeking review of the trial court's denial of its motion for involuntary dismissal:

> Our review of the explicit language of [the] applicable article is that the trial court "may decline to render any judgment until the close of all the evidence." La.Code Civ.P. art. 1672(B). Thus, there is nothing for this court to review, as the denial of a motion for involuntary dismissal is purely discretionary. *See Townsend v. Delchamps, Inc.,* 94-1511 (La.App. 1 Cir. 10/6/95), 671 So.2d 513, *writ denied,* 95-2648 (La.1/12/96), 667 So.2d 522; *Parker v. Winn–Dixie La., Inc.,* 615 So.2d 378 (La.App. 5 Cir.1993); *Riser v. Am. Med. Int'l, Inc.,* 620 So.2d 372 (La.App. 5 Cir.1993); *Blount v. Peabody Shoreline Geophysical,* 439 So.2d 565 (La.App. 1 Cir.1983).

Accordingly, we find no merit in Dollar General's assignment of error with respect to the denial of its motion for involuntary dismissal; however, we review the merits of the trial court's liability determination below.

Dollar General's Liability Under La.R.S. 9:2800.6:

Dollar General's first three assignments of error address the trial court's findings pertaining to its liability under La.R.S. 9:2800.6, including the credibility of Mr. Pierite. We review the trial court's findings in accordance with the following:

An appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even where the appellate court feels that its own evaluations and inferences are as reasonable. If the trial court's findings are reasonable in light of the record read in its entirety, a court of appeal may not reverse even though it is convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Id.*

When the trial court's findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands that great deference be given to the trier of fact's findings. This is so because only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said by the witnesses. *Id.* It is only where the documents or objective evidence so contradict a witness's story, or the story is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit the witness's story, that the court of appeal may find manifest error or clear wrongness in a finding purportedly based on a credibility determination. *Id.*

*Blackman v. Brookshire Grocery Co.*, 07-348, p. 2 (La.App. 3 Cir. 10/3/07), 966 So.2d 1185, 1187.

A merchant's liability for a patron's injuries resulting from a slip and is governed by La.R.S. 9:2800.6, which states:

A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.

B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:

(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.

4

(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.

(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

The failure to prove any of the requirements of La.R.S. 9:2800.6(B) is fatal to the claimant's cause of action. *White v. Wal-Mart Stores, Inc.*, 97-393, (La. 9/9/97), 699 So.2d 1081.

On appeal, Dollar General challenges the existence of a hazardous condition that caused Mr. Pierite to fall. It specifically takes issue with the trial court's conclusion that Mr. Pierite fell in a liquid substance on the floor, which was based on the trial court's inference from video surveillance that showed a child carrying a cup or bottle in the area forty-five minutes before Mr. Pierite fell.

"The first element [of La.R.S. 9:2800.6(B)] contemplates whether a condition presented an unreasonable risk of harm." *Bonstell v. Brookshire Grocery Co.*, 09-154, p. 5 (La.App. 3 Cir. 6/3/09), 15 So.3d 1112, 1115. "In a slip and fall case, a hazard is established when the fall results from a foreign substance on a floor or an unreasonably slippery surface." *Burnett v. M & E Food Mart, Inc. No. 2*, 00-350, p. 3 (La.App. 3 Cir. 11/15/00), 772 So.2d 393, 396, *writ denied*, 00-3425 (La. 2/16/01), 786 So.2d 101 (footnote omitted). "The claimant must make a *positive showing* of the existence of the condition prior to the fall. A defendant merchant does not have to make a positive showing of the absence of the condition prior to the fall." *White*, 699 So.2d at 1084 (emphasis added).

Our review of the record reveals a lack of evidence to support the existence of a condition, or hazard, imposing an unreasonable risk of harm. At trial, Mr. Pierite

5

testified that on the day of the accident, a friend brought him to the Dollar General Store to pick up a few miscellaneous items. He indicated that it was sunny outside at the time. He testified, "I walked through the second door and got on the side of the cash register[,] and I was just walking and something was on the ground slippery and I fell . . . . Right on the side of the register." When asked what he slipped and fell in, Mr. Pierite stated: "I didn't see anything on the floor as I walked in. But once I got up it was a slippery substance on the floor[,] and you seen [sic] my skid marks from my slipper[,] and my shorts and my tee shirt was [sic] wet."

Video surveillance from the day of the incident, which included three separate video clips showing three different camera angles in the area near and around where Mr. Pierite fell, was submitted into evidence. The second video clip includes approximately one hour and forty minutes of coverage and shows Mr. Pierite fall at approximately forty-nine minutes and fifty-six seconds into the video. The video shows that the fall took place between the cash register/check-out area, which was on Mr. Pierite's left, and near the end of a shopping aisle, which was to his right. After the fall, Mr. Pierite can be seen lying on his left side directly in front of what the parties called the "end cap" of an aisle, which are shelves with merchandise facing towards the cash-register/check out area. The video also shows that, at the time of the fall, Ms. Hargrave was away from the cash register area and could not have seen Mr. Pierite fall. The video surveillance does not specifically show the presence of any liquid or other substance on the floor in the area where Mr. Pierite fell immediately prior to, during, or after his fall.

The video surveillance also shows that Mr. Pierite remained lying on the floor in front of the "end cap" of the aisle for about two minutes after he fell, and then he sat up unassisted. His back is facing the camera. About ten minutes after he fell, a

paramedic assisted him to the standing position. About twelve minutes after the incident, the paramedic exited the store with an empty stretcher, and Mr. Pierite can be seen walking out of the store following behind the stretcher. Mr. Pierite testified that he refused treatment from the paramedics at the scene following the incident. There is no indication on the video that Mr. Pierite's white shirt or khaki pants were wet.

Within less than a minute after Mr. Pierite fell, Ms. Hargrave can be seen walking over to Mr. Pierite. She immediately took photographs of him and the area around him. The photographs were submitted into evidence. Mr. Pierite can be seen in the photographs wearing dark blue sandals, which he called "slippers," and socks. None of the photographs reflect the presence of any liquid or other substance on the white, or light-colored, tile floor. All that can be seen on the floor are several rust-colored, thin, straight lines, or markings, which Mr. Pierite identified as the "skid marks" from his fall. Ms. Hargrave also testified that, after the incident, Mr. Pierite told her those markings were left behind by his "slippers." According to Ms. Hargrave, however, the markings in the photographs were stains on the floor that were still there at the time of trial and that were there before Mr. Pierite entered into the store. Ms. Hargrave testified that there was no liquid or other substance on the floor prior to Mr. Pierite's fall.

The video surveillance also shows the time prior to and after Mr. Pierite's fall. At about two minutes and thirty-four seconds into the second video (about forty-five minutes prior to Mr. Pierite's fall), a child and an adult woman can be seen approaching the cash register/check-out line together, and they get in line behind another customer. The child can be seen walking out of line and then running toward the entrance/exit of the store, through the area where Mr. Pierite later falls, with what

7

appears to be a cup or bottle. The cup or bottle appears to have a lid on it, and the child appears to have the lid in his mouth. The adult appearing to be with the child then gets out of line, goes and gets the child, and brings him back into the line. At approximately three minutes and fifteen seconds into the second video, the child can be seen bringing the cup or bottle to his mouth and then taking some merchandise off of the counter. The child and the adult then exit the store at about three minutes and twenty-four seconds into the video, walking through the area where Mr. Pierite later fell. After the child and adult leave the store, about forty-five minutes pass until Mr. Pierite enters the store and falls.

The video surveillance shows that the area where Mr. Pierite fell was a high-traffic area. Many customers can be seen on the video surveillance walking through the area during the forty-five minutes between the child leaving the store and Mr. Pierite's fall. None of those customers appear to have any difficulty walking in the area or otherwise move in a way to suggest that there was a liquid or other substance on the floor. About thirty seconds prior to Mr. Pierite's fall, Ms. Harris can be seen walking through the area with no difficulty or other indication that there was anything on the floor. She testified that she did not notice anything on the floor at that time.

The video surveillance also shows that after Mr. Pierite fell, neither Ms. Hargrave nor Ms. Harris, who both walked in the area following the incident on several occasions, cleaned or wiped the floor, and Ms. Hargrave did not post any wet-floor signs in the area. Again, the photographs taken by Ms. Hargrave after the incident do not show any liquid or other substance on the floor. In addition, about five minutes after Mr. Pierite fell, another customer can be seen walking through the same area with no difficulty. Further, following the incident, multiple customers

8

walked through the area, not one indicating that there was any liquid or substance on the floor.

Based upon the evidence in the record, we conclude that the trial court's finding that a hazard (i.e. a liquid on the floor) existed prior to Mr. Pierite's fall was manifestly erroneous. The only evidence of any hazard on the floor is Mr. Pierite's testimony that his clothes were wet after he fell. However, given the objective evidence in the record that shows the events leading up to and after Mr. Pierite's fall, Mr. Pierite's unsubstantiated testimony is insufficient to establish, by a preponderance of the evidence, the existence of a hazardous condition prior to his fall.

The video surveillance, which includes over fifty minutes of coverage prior to Mr. Pierite's fall, fails to positively establish the presence or source of any liquid or slippery substance on the floor in which Mr. Pierite could have slipped. While the video does show a child carrying a cup in the area forty-five minutes before Mr. Pierite fell, there is no indication that anything spilled from the cup onto the floor or that the cup was leaking. There is further no evidence to suggest that any liquid on the floor in the high-traffic area where the child carried the cup would still be on the floor forty-five minutes later when Mr. Pierite fell. The trial court's inference that the child's cup was the source of the liquid that Mr. Pierite claims left his clothes wet after he fell is not reasonably supported by the record. Given that there is insufficient evidence of the existence of any liquid or slippery substance on the floor prior to Mr. Pierite's fall, Mr. Pierite failed to establish his burden of proving the existence of a condition that presented an unreasonable harm, as required by La.R.S. 9:2800.6(B)(1).

9

Similarly, Mr. Pierite failed to prove by a preponderance of the evidence that Dollar General had actual or constructive notice of any hazard on the floor, even if one were to accept Mr. Pierite's unsubstantiated testimony that his clothes were wet after he fell. There is no evidence in the record to suggest that Dollar General had actual notice of anything on the floor in the area where Mr. Pierite fell. Further, "'Constructive notice' means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care." La.R.S. 9:2800.6(C)(1). To prove constructive notice, "the claimant must come forward with *positive* evidence showing that the damage-causing condition existed for some period of time, and that such time was sufficient to place the merchant defendant on notice of its existence." *White*, 699 So.2d at 1082 (emphasis added). "Mere speculation or suggestion is not enough to meet the stringent burden imposed upon a plaintiff by the statute governing negligence claims against merchants." *Guillaume v. Brookshire Grocery Co.*, 50,745, p. 6 (La.App. 2 Cir. 6/29/16), 198 So.3d 204, 208.

The video surveillance in the instant case does not provide visual evidence of a wet or slippery substance on the floor, and it further fails to establish that someone or something created a wet or slippery substance in the area where Mr. Pierite fell. It also shows that the subject area is a high-traffic area; however, it fails to show that anyone else slipped in the area or attempted to avoid the area. In addition, the video does not provide evidence of anyone attempting to clean the area in the fifty minutes prior to, or after, Mr. Pierite's fall. This lack of positive evidence showing that a liquid or slippery substance existed on the floor prior to Mr. Pierite's fall is insufficient to establish constructive notice on the part of Dollar General. *See Taylor v. Wal-Mart Stores, Inc.*, 464 Fed.Appx. 337 (5th Cir. 2012), wherein the court

10

analyzed whether video surveillance sufficiently established constructive notice under La.R.S. 9:2800.6. Therefore, we conclude that Mr. Pierite failed to establish his burden of proving constructive notice on the part of Dollar General, as required by La.R.S. 9:2800.6(B)(2).

Because the record does not reasonably support a finding of liability on the part of Dollar General under La.R.S. 9:2800.6, we reverse the trial court's judgment in favor of Mr. Pierite and further render judgment in favor of Dollar General.

## DECREE

For the reasons set forth above, we reverse the judgment of the trial court, render judgment in favor of Dollar General, and dismiss Mr. Pierite's claims against it. Costs of this appeal are assessed to Appellee, Mr. Pierite.

**REVERSED AND RENDERED.**